**STATE of Tennessee, Appellee,**

v.

**Jeffrey WALKER, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Oct. 22, 1999.

Application for Permission to Appeal Denied by Supreme Court April 24, 2000.

Shara Ann Flacy, District Public Defender, and William C. Bright, Assistant Public Defender, Pulaski, TN, for Appellant.

John Knox Walkup, Attorney General of Tennessee, Clinton J. Morgan, Assistant Attorney General of Tennessee, Nashville, TN, and T. Michael Bottoms, District Attorney General, Lawrenceburg, TN, for Appellee.

## OPINION

JOSEPH M. TIPTON, Judge.

The defendant, Jeffrey Walker, appeals as of right from his conviction by a jury in the Maury County Circuit Court for selling one-half gram or more of a substance containing cocaine, a Class B felony. The trial court sentenced the defendant as a career offender to thirty years in the custody of the Department of Correction to be served consecutively to prior sentences. The court also imposed a two-thousand-dollar fine. The defendant contends that:

(1) the trial court erred by allowing the introduction of the defendant's five prior cocaine-related felony convictions to impeach his credibility under Rule 609, Tenn.R.Evid.;

(2) the trial court erred by failing to instruct the jury that it must find beyond a reasonable doubt that the amount of cocaine sold by the defendant was one-half gram or more; and

(3) the trial court erred by finding that the defendant was a career offender.

We reverse the defendant's conviction and remand the case for a new trial because the trial court improperly allowed the defendant's prior convictions to be introduced for impeachment purposes.

The proof at trial showed that Agent Maxie Gilleland of the Tennessee Bureau of Investigation conducted an undercover drug operation in Columbia using Shelley Holland and her mother as informants. On September 20, 1995, Agent Gilleland and Ms. Holland attempted to make drug purchases near the Three Hundred Club. As they drove by the club, an unknown young man stepped out of a crowd and said, "I'll beep you." Ms. Holland said that she then received a beeper message from someone calling from the Three Hundred Club. Ms. Holland called the number and had a conversation with an unidentified man, and they made arrangements to meet about fifteen minutes later in a church parking lot near the club for the sale of an ounce of cocaine for one thousand three hundred fifty dollars. Two men were at the location when they arrived at approximately 9:00 or 10:00 p.m.

Ms. Holland walked over to the men while Agent Gilleland remained inside his truck. One of the men identified himself

as the person who spoke with Ms. Holland on the telephone. The man gave Ms. Holland a plastic bag containing cocaine, and she took the bag to Agent Gilleland to weigh it on a set of finger scales. Agent Gilleland testified that the substance weighed approximately twenty-six or twenty-seven grams and that an ounce of cocaine is twenty-eight grams. Agent Gilleland then gave Ms. Holland fourteen marked, one-hundred-dollar bills, and Ms. Holland walked back to the men and gave them the money. Ms. Holland identified the defendant as the man who sold her the drugs. She testified that she could not see the defendant and the other man clearly when they first arrived but that she had no trouble seeing the defendant during the transaction because she stood approximately one foot away from the defendant and a streetlight was nearby. Neither Agent Gilleland nor Ms. Holland knew the defendant or the other man. Agent Gilleland testified that he could not identify the person who sold the drugs to Ms. Holland.

Ms. Holland described the defendant as a black male approximately six feet tall, having large eyes, and wearing green shorts, a black t-shirt and a baseball cap on backwards. Agent Gilleland gave this information to the local police along with the direction the men were traveling. Deputy William Doelle of the Maury County Drug Task Force testified that after he received the information, he drove by the Three Hundred Club and saw the defendant standing outside. He said the defendant matched the description given by Ms. Holland.

Two days later, the defendant was arrested during a drug bust at the Three Hundred Club. The marked one-hundred-dollar bills were not in the defendant's possession at the time of his arrest. The defendant was taken to the police station. Ms. Holland was also at the police station identifying other persons from whom she had purchased drugs as part of the undercover operation. Ms. Holland testified that she recognized the defendant as the person from whom she had purchased an ounce of cocaine on September 20. Ms. Holland identified the defendant at trial as well. Diane Smith, a forensic chemist with the Tennessee Bureau of Investigation, testified that she analyzed the substance sold to Ms. Holland and determined that it was 24.8 grams of cocaine. Her lab report also reflects that the amount of cocaine was 24.8 grams.

The defendant presented evidence of an alibi. Keyonna Mostiller, the defendant's former girlfriend, testified that the defendant lived with her on September 20, 1995. She stated that the defendant babysat their daughter while she went to work on that day. She said she last saw the defendant on September 20 when she left for work at approximately 6:30 p.m. Ms. Mostiller said the defendant was at home when she returned from work the next day, but she admitted that she did not know where the defendant was around 9:00 or 9:30 p.m. on September 20. She testified that the defendant did not have any means of transportation. Michael Jay Buchanan, Ms. Mostiller's brother, testified that he lived with Ms. Mostiller around the time of the offense. Mr. Buchanan testified that the defendant often babysat Ms. Mostiller's children, but he said he did not know whether the defendant was at the Three Hundred Club on September 20.

The defendant testified, denying that he arranged a drug deal or sold drugs on September 20. He said he was at home babysitting for Ms. Mostiller. The defendant said he did not have any money or a pager when he was arrested on September 22. On cross-examination, the defendant was questioned about his prior convictions. He admitted that he was convicted on August 24, 1992, of four counts of selling cocaine, but he denied having a 1993 conviction for possession with the intent to sell cocaine. The defendant claimed that he had not sold drugs since 1992.

## I. ADMISSIBILITY OF PRIOR CONVICTIONS

The defendant contends that the trial court erred by allowing the introduction of five prior cocaine-related convictions to impeach his credibility. He asserts that the convictions' probative value as to credibility is slight and that the danger of unfair prejudice is great, especially because the offenses are similar to the charged offense. He argues that given the slight probative value and the great potential for unfair prejudice, the trial court erred in allowing the state to introduce the convictions. The state argues that the trial court did not err in admitting evidence of the defendant's prior cocaine felony convictions for impeachment purposes. We conclude that the trial court committed reversible error by admitting evidence of the defendant's five prior convictions for the sale of cocaine and possession with the intent to sell cocaine.

Before trial, the state provided written notice of its intent to use the defendant's prior convictions in 1991 and 1992 for one count of possession with the intent to sell cocaine and four counts of selling cocaine. At a pre-trial hearing, the defendant objected to the use of the prior convictions for impeachment purposes, arguing that they had little probative value of untruthfulness and that they were highly prejudicial given the similarity to the charged offense. The trial court agreed that the introduction of the evidence would be prejudicial to the defendant. However, it ruled that the prior convictions were admissible, stating as follows:

> [T]here's five felony convictions for the sale of cocaine. I would certainly think that if Mr. Walker testifies that ... it would be highly unfair to the State and to society as a whole for me not to permit them to ask him about these other convictions for the ... same offense that he's on trial here.
>
> As I stated before, ... if you fool around with cocaine, you have to sneak around when you buy it, sneak around when you sell it, sneak around when you use it. You're just a flat sneak, and a sneak will lie, and I think that it would not be doing this community fair for me to say, "Oh, no, we're not going to say anything about these other five times it's happened." So I'm going to permit the State to ask the defendant, if he testifies, about these five convictions for sale of cocaine or possession of cocaine for resale.

When questioned on cross-examination, the defendant admitted having four prior convictions for selling cocaine and acknowledged his signature on the plea agreement relative to the 1992 conviction for possession with the intent to sell cocaine. After returning from a break following the defendant's testimony, the trial court instructed the jury that it could consider the defendant's prior convictions only as to truthfulness and not as evidence of guilt. The trial court instructed the jury similarly at the close of the proof.

Pursuant to Rule 609, Tenn.R.Evid., the credibility of the accused may be attacked by presenting evidence of prior convictions. The prior conviction must be for an offense punishable by death or imprisonment in excess of one year or for a crime involving dishonesty or false statement. Tenn.R.Evid. 609(a)(2). Less than ten years must have elapsed between the date the accused was released from confinement and the commencement of prosecution. Tenn.R.Evid. 609(b). Also, the state must give reasonable written notice of the impeaching conviction before trial, and the trial court must find that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues. Tenn.R.Evid. 609(a)(3).

The fact that a prior conviction involves the same or similar crime for which the defendant is being tried does not automatically require its exclusion. *State v. Miller*, 737 S.W.2d 556, 560 (Tenn.Crim.App.1987). The trial court must analyze the relevance that the impeaching convic-

tion has to the issue of credibility and then assess the similarity between the crime on trial and the crime underlying the impeachment conviction in balancing the probative value on credibility against its unfair prejudicial effect on the substantive issues. *See State v. Mixon,* 983 S.W.2d 661, 674 (Tenn.1999); *State v. Farmer,* 841 S.W.2d 837, 839 (Tenn.Crim.App.1992). The trial court's decision to allow the prior convictions under Rule 609 will not be reversed on appeal unless the trial court abused its discretion. *State v. Blanton,* 926 S.W.2d 953, 960 (Tenn.Crim.App.1996).

■ Relative to probative value on the issue of credibility, Rule 609(a)(2) provides two categories of convictions: (1) convictions for felonies and (2) convictions for offenses that "involved dishonesty or false statement." The Advisory Commission Comment states that the rule follows *State v. Morgan,* 541 S.W.2d 385, 388–89 (Tenn. 1976), which had adopted the federal Rule 609(a), (b). When the source of our rule is the federal rule, federal developments are instructive. *See State v. Hicks,* 618 S.W.2d 510, 514 (Tenn.Crim.App.1981). In the federal rule, "dishonesty and false statement" are meant to relate to "crimes such as perjury, subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of *crimen falsi,* commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully." Conference Report No.1597 at 9 (1974) *reprinted in* 1974 U.S.C.C.A.N. 7098, 7102; Advisory Committee's Note to Rule 609 (as amended in 1990). The committee note also states that certain decisions that admit convictions for bank robbery or bank larceny take an "unduly broad view of 'dishonesty.'"

The commission of any felony is considered to be generally probative of a defendant's criminal nature from which a jury could infer a propensity to falsify testimony. *See United States v. Barnes,* 622 F.2d 107, 109 (5th Cir.1980). "Dishonesty and false statement" are more directly related to a defendant's truthfulness. Regardless of which category of offense is involved, the danger of prejudice relates to the risk that the jury will consider the defendant's criminal nature as evidence that the defendant acted illegally on the day in question. *Barnes,* 622 F.2d at 109. Thus, the rule requires balancing the interests against the risks.

First, we note that the fact that the defendant denied being the person who sold Ms. Holland the cocaine placed his credibility directly in issue. The trial was essentially a swearing match, and who was to be believed by the jury was critical. Obviously, the fact that the defendant had previous felony convictions would have probative value regarding his credibility.

In determining the weight of the probative value of the convictions, an initial question is whether the convictions for the sale and felonious sale and possession of cocaine involve dishonesty. The trial court's determination that a drug seller has to "sneak around" and its resulting conclusion that "a sneak will lie" indicates that it believed the offenses were quite relevant to dishonesty. In *State v. Gibson,* 701 S.W.2d 627, 629 (Tenn.Crim.App.1985), a conviction for selling drugs was used to impeach the defendant in a drug sale prosecution because the "nature of the act of dealing in drugs is indicative of dishonesty, expressing as it does the design and determination to violate the law." Also, we note that this court has stated that "the act of drug dealing is suggestive of dishonesty because the dealer is engaged in a clandestine commercial enterprise which is carried out deceitfully beyond the scrutiny of society's institutional watchdog such as health code enforcers, licensing authorities, and taxing agencies." *State v. Brian Roberson,* No. 01C01–9801–CC–00043, 1998 WL 917804, Williamson County (Tenn.Crim. App. Dec. 21, 1998), *app. denied* (Tenn. May 13, 1999).

We believe, however, that the sale of cocaine does not involve "dishonesty or false statement" as contemplated by Rule 609(a)(2). Relative to *Roberson,* we question whether we can assume that the defendant's previous sales of cocaine for which he was convicted involved money laundering, tax evasion, or other so-called deceitful conduct. Moreover, almost all crimes are committed with the intention of not being caught. In this respect, the sale of a drug in clandestine fashion does not readily relate to dishonesty or false statement. See *United States v. Hayes,* 553 F.2d 824, 827–28 (2d Cir.1977) (holding that proof of cocaine importation, alone, does not show dishonesty or false statement even if it shows stealth). In fact, we believe that the evidence relating to the elements of the crime is to be considered in questioning the offense's relevance to dishonesty, not the general circumstances or environment within which the offense was committed. See *United States v. Lewis,* 626 F.2d 940, 946 (D.C.Cir.1980). In this respect, we conclude that the mere fact of the sale of cocaine is not as probative of the defendant's credibility as would be an offense involving dishonesty or false statement.

However, five previous felony convictions are more probative on the issue of the defendant's credibility than would be a fewer amount. One can more readily infer that the defendant has a disregard for the law that would include not testifying truthfully. The problem, though, arises from the nature of the prior convictions.

The fact that the defendant had five previous felony convictions relating to the sale of cocaine greatly increases the risk that the jury would consider them to be evidence that the defendant acted the same way on the day in question, i.e., he sold cocaine.

> When an impeaching conviction is substantially similar to the crime for which the defendant is being tried, there is a danger that jurors will erroneously utilize the impeaching conviction as pro-pensity evidence of guilt and conclude that since the defendant committed a similar offense, he or she is probably guilty of the offense charged. *State v. Barnard,* 899 S.W.2d 617, 622 (Tenn. Crim.App.1994); *State v. Farmer,* 841 S.W.2d 837, 839–40 (Tenn.Crim.App. 1992); *Long v. State,* 607 S.W.2d 482 (Tenn.Crim.App.1980). Accordingly, the unfairly prejudicial effect of an impeaching conviction on the substantive issues greatly increases if the impeaching conviction is substantially similar to the crime for which the defendant is being tried.

*Mixon,* 983 S.W.2d at 674. In reversing an assault and battery conviction because the state proved a prior conviction for assault and battery, our supreme court adopted the language of our former colleague, Robert K. Dwyer:

> When the prior conviction was shown, it may have settled all questions for the jury, allowing them to conclude that because *he did it once, more than likely he did it again.*

*State v. Roberts,* 703 S.W.2d 146, 147 (Tenn.1986) (emphasis in original).

We believe that proof of the five felony cocaine convictions cannot help but unfairly prejudice the jury. We note that this court has previously reversed felonious cocaine possession convictions because two prior cocaine possessions and one marijuana possession by the defendants were used as evidence. See *State v. Luellen,* 867 S.W.2d 736, 741 (Tenn.Crim.App.1992). Moreover, we conclude that the trial court's limiting instructions could not overcome the prejudice to the defendant.

> There are limits to the human mind. We think to say to any jury, there is evidence here the defendant before you has been guilty of several prior crimes but you are not to consider this in determining his guilt or innocence of the present crime, is at best to severely test the ability of the mind to remove all prejudice therefrom.

*Harrison v. State*, 217 Tenn. 31, 40, 394 S.W.2d 713, 717 (1965).

As previously stated, the very fact that the defendant had five felony convictions leads to an inference that the defendant would disregard the law in his testimony. This leads us to believe that a proper balance in this case would be to allow the state to prove the fact of the five felonies while excluding the fact that the felonies were cocaine related. Although not disclosing the type of felony to the jury might lead to speculation, it would be of much less concern than the certainty of prejudice if the jury knew the types of felonies. However, we are obligated to order exclusion of the convictions in this case because of Tennessee Supreme Court decisions. In *State v. Galmore*, 994 S.W.2d 120 (Tenn.1999), our supreme court held that the state may not impeach a defendant's credibility by referring to an unnamed felony conviction. Although we believe the fact that the present case involves five prior felony convictions could distinguish it from the holding in *Galmore*, we are constrained by *State v. Taylor*, 993 S.W.2d 33 (Tenn.1999). In *Taylor*, a burglary and theft case, the trial court ruled that the state could impeach the defendant with his seven prior burglary convictions and one prior larceny conviction by presenting them to the jury only as "felonies involving dishonesty." Our supreme court held that the trial court erred for the same reasons provided in *Galmore*. *See* 993 S.W.2d at 35. The fact that *Taylor* dealt with eight similar prior convictions is significant to the present case. In consideration of the supreme court cases, we conclude that the defendant's prior convictions are inadmissible in any form at a retrial.

## II. OMISSION FROM THE JURY INSTRUCTIONS OF AMOUNT OF COCAINE SOLD

The defendant contends that the trial court erred by failing to instruct the jury that in order to find the defendant guilty of a Class B felony, it must find beyond a reasonable doubt that the amount of the substance containing cocaine was one-half gram or more. He argues that he can only be convicted of selling less than one-half gram of cocaine, a Class C felony, because the trial court omitted from its jury instructions an essential element of the Class B felony offense.

The indictment charges that the defendant "did unlawfully and knowingly sell ... Cocaine ... in the amount of .5 grams or more, in violation of *Tennessee Code Annotated* 39–17–417(a)(c)(1)." At the beginning of the trial, the indictment was read to the jury. At the close of the proof, the trial court instructed the jury that the "indictment in this case charges the defendant with the offense of selling a schedule II controlled substance, to wit, cocaine." It stated that it was the state's theory that the defendant was guilty as charged in the indictment.

The trial court defined the elements of the offense as follows:

For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:

(1) that the defendant sold cocaine, a Schedule II controlled substance, and

(2) the defendant acted knowingly.

The instructions given by the trial court omitted the requirement that the jury must find beyond a reasonable doubt that the amount of cocaine sold was one-half gram or more. The record reflects that the trial court gave the indictment and the jury instructions to the jury before it retired for its deliberations. When the jury returned its verdict, it stated that it found the defendant guilty of "selling cocaine." The jury verdict portion of the indictment states the following: "We, the Jury, find the defendant guilty of selling cocaine."

The defendant first raised the issue in his motion for new trial. The defendant asserted as a ground for a new trial that the conviction should be amended to a Class C felony because the trial court

failed to instruct the jury regarding the amount of cocaine sold necessary for a Class B felony. The state asserted that no instruction on the amount was required given the trial court's instruction that the jury must find the defendant guilty of selling cocaine as charged in the indictment, and the indictment properly alleged the amount necessary for a Class B felony conviction of selling cocaine. The defendant conceded that there was no dispute at trial regarding the amount of cocaine involved. The trial court overruled the motion, stating that it was not required to instruct the jury regarding the amount of cocaine involved because there was no dispute as to the amount of cocaine sold. The trial court also noted that the indictment alleged that the defendant sold one-half gram or more of cocaine and that the proof showed an amount in excess of one-half gram.

 The defendant has a constitutional right to complete and accurate instructions of the law. *State v. Teel,* 793 S.W.2d 236, 249 (Tenn.1990). The trial court has a duty to give a complete charge of the law of the offense included in the indictment, without any request on the part of the defendant to do so. Tenn. Code Ann. § 40–18–110(a); *Teel,* 793 S.W.2d at 249. The failure to do so deprives the defendant of the right to a jury trial. *Id.* The Fifth and Sixth Amendments to the United States Constitution "require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *United States v. Gaudin,* 515 U.S. 506, 509, 115 S.Ct. 2310, 2313, 132 L.Ed.2d 444 (1995); *see Sullivan v. Louisiana,* 508 U.S. 275, 277–78, 113 S.Ct. 2078, 2080–81, 124 L.Ed.2d 182 (1993).

First, we again note that the indictment containing the requisite quantity element was read to the jury at the beginning of the case and was given to the jury for deliberations. The trial court also charged the jury that the state's theory was that the defendant was guilty as charged in the indictment. These circumstances indicate that the jury may well have been expressly aware of the one-half gram requirement. However, we will not speculate that such was the case.

 We conclude that the trial court erred by failing to instruct the jury that it must find beyond a reasonable doubt that the defendant sold one-half gram or more of cocaine. The amount of cocaine sold by the defendant is an essential element of the Class B felony of selling cocaine. *See State v. Hilliard,* 906 S.W.2d 466, 470 (Tenn.Crim.App.1995) (reducing a Class B felony conviction for possession with the intent to sell cocaine to a Class C felony because the indictment failed to include the amount of cocaine involved, an essential element of the Class B felony offense). The trial court was obligated to instruct the jury that it must find beyond a reasonable doubt the element relating to the amount of cocaine sold. The failure to do so constituted error.

 The question now becomes whether the failure to instruct on an element of the offense is subject to constitutional harmless error analysis. We conclude that it is and that it constituted harmless error beyond a reasonable doubt. In *Teel,* the defendant contended that the failure to instruct the jury on the element of rape—the felony supporting the felony murder conviction—constituted reversible error. Our supreme court stated that whether harmless error analysis applies when a trial court omits an essential element was an unsettled area of the law. *Teel,* 793 S.W.2d at 249. It stated, though, that harmless error analysis applied to the failure to define a separate felony that is an essential element of the felony with which a defendant is charged. *Id.* at 249–50; *see also State v. Lee,* 618 S.W.2d 320, 323 (Tenn.Crim.App.1981). The court decided that the harmless error analysis applied and concluded that the failure to instruct was harmless beyond reasonable doubt.

The law is presently more settled. In *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), the Supreme Court held that the failure to instruct a jury about a material element was subject to constitutional harmless error analysis. The majority opinion noted that the Court had previously used a harmless error analysis in a case in which the trial court instructed the jury to consider obscenity under the wrong standard, meaning the jury did not make a finding on the *actual* element of the offense. *See Pope v. Illinois*, 481 U.S. 497, 499–501, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987). Also, the Court had previously analogized the omission of an element to the misstatement of the element in the instructions. *See California v. Roy*, 519 U.S. 2, 5, 117 S.Ct. 337, 339, 136 L.Ed.2d 266 (1996). In separate opinions by Justices Stevens and Scalia, four justices concluded that the harmless error analysis should be limited to determining whether the jury verdict necessarily embraced the omitted element.

We note that this court has also applied a constitutional harmless error analysis to the failure to instruct the jury about a material element. In *David A. Scott, III v. State*, No. 01C01–9709–CR–00400, 1999 WL 233643, Davidson County (Tenn.Crim. App. Apr. 20, 1999), *app. filed* (Tenn. June 9, 1999), this court reviewed an aggravated rape conviction relative to the trial court erroneously failing to instruct the jury that the offense had to be accomplished with the defendant having an intentional, knowing, or reckless mental state. The Court recognized Justice Scalia's minority position first exhibited in *Roy* and refrained in *Neder* that the error can be harmless only when the record and evidence reflect that the jury verdict necessarily embraces the omitted element. Considering that both the petitioner and the victim testified that sexual penetration occurred and that the central contested question was the issue of consent, this court concluded that the jury verdict necessarily included a determination of an appropriate mental state.

We believe that a similar result is appropriate in the present case. The state chemist testified that she had 24.8 grams of substance that she tested and determined to be cocaine. The defendant did not question these findings. His only defense was that he was not the seller. Under the facts in this case, the guilty verdict finding that the defendant sold the cocaine necessarily embraced the quantity of the cocaine that was proven.

## III. SENTENCING

The defendant challenges the trial court's finding that he is a career offender. He argues that the trial court should have treated his prior convictions for aggravated assault and sale of cocaine as a single conviction under Tenn. Code Ann. § 40–35–108(b)(4), which provides as follows:

> Convictions for multiple felonies committed as part of a single course of conduct within twenty-four (24) hours constitute one (1) conviction for the purpose of determining prior convictions; however, acts resulting in bodily injury or threatened bodily injury to the victim or victims shall not be construed to be a single course of conduct. . . .

The defendant relies upon *State v. Horton*, 880 S.W.2d 732, 736 (Tenn.Crim.App.1994), which holds that the twenty-four hour merger rule exception under Tenn. Code Ann. § 40–35–108(b)(4) applies only if more than one prior conviction involving bodily injury or threatened bodily injury exists.

At the sentencing hearing, the state introduced a copy of the presentence report and certified copies of the defendant's prior convictions. The defendant objected only to the prior convictions for aggravated assault and possession with the intent to sell cocaine, claiming that the offenses occurred on the same day and therefore, should be considered as one conviction for range enhancement purposes. With respect to the challenged convictions, the "DATE OF EVENT/ARREST" portion of

the presentence report provides the same date, April 5, 1992.

The record reflects that the trial court reviewed its files on the prior convictions and stated that the indictment for the possession with intent to sell cocaine conviction alleged November 9, 1991. The court later reviewed the judgments of conviction for the offenses and stated that the judgments for the aggravated assault and for the possession with intent to sell cocaine provide that the two offenses occurred on April 5, 1992. Defense counsel argued that the two offenses should be treated as a single conviction because they occurred on the same date. Counsel asserted that the exception to the twenty-four hour merger rule was not applicable because the reference to "acts" in Tenn. Code Ann. § 40–35–108(b)(4) required that more than one of the prior convictions be for a violent offense. The prosecutor replied that the exception applied even though only one of the defendant's prior convictions was for a violent offense, and thus, the convictions for aggravated assault and possession with the intent to sell cocaine should be considered as separate convictions. The trial court agreed with the prosecutor's position, noting that Tenn. Code Ann. § 40–35–108(b)(4) provides that "acts resulting in bodily injury or threatened bodily harm to the victim or victims shall not be construed to be a single course of conduct." The trial court found the defendant to be a career offender, relying upon the judgments of conviction entered as exhibits.

The record is unclear as to the date the defendant committed the offense of possession with intent to sell cocaine. Reading from the indictment in the case, the trial court stated that it alleged the date of November 9, 1991. However, it later stated that the judgment of conviction for the offense alleged April 5, 1992, the same date that the aggravated assault occurred. In this respect, we note that the record on appeal does not include the judgments of conviction entered as exhibits at the sentencing hearing. It is the duty of the appealing party to prepare a fair, accurate and complete record on appeal to enable meaningful appellate review. T.R.A.P. 24(b).

In any event, the trial court ruled that the convictions should be treated as separate convictions given the fact that the offense of aggravated assault involved or threatened bodily injury. The trial court agreed with the state's position that two prior convictions for violent felonies were not necessary for the twenty-four hour merger rule exception under Tenn. Code Ann. § 40–35–108(b)(4) to apply. In this respect, the trial court's ruling is erroneous. As stated in *Horton,* 880 S.W.2d at 736, the twenty-four hour merger rule exception applies when there is more than one previous conviction involving or threatening bodily injury. Thus, if the defendant is convicted again, the merger rule applies.

In consideration of the foregoing and the record as a whole, we reverse the defendant's conviction and remand the case for a new trial.

DAVID H. WELLES, Judge, and JOE G. RILEY, Judge, concur.